```
                                                  ┌──────────────────────────────────┐
                                                  │ USDC SDNY                        │
                                                  │ DOCUMENT                         │
                                                  │ ELECTRONICALLY FILED             │
                                                  │ DOC #:_____                │
                                                  │ DATE FILED: 8/22/18              │
                                                  └──────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

IN RE:                                              :          16-MD-2704 (PAE)
                                                    :          16-MC-2704 (PAE)
INTEREST RATE SWAPS ANTITRUST LITIGATION            :
                                                    :          ORDER NO. 44
*This Document Relates to All Actions*              :

------------------------------------------------------------------- X

## ORDER RESOLVING
## DISCOVERY DISPUTE

PAUL A. ENGELMAYER, District Judge:

The Court has reviewed the parties' letter submissions (Dkts. 468, 484) relating to

plaintiffs' request for a new round of document review and production based on the application

of new search terms and strings. This Order resolves that discovery dispute.

1.      As to all but one topic, involving Tradeweb's product committee and trading

protocol groups as discussed below, the Court denies plaintiffs' request to apply new search

terms so as to potentially yield additional document discovery. The existing discovery protocols,

including as to search terms and custodians, were negotiated among many parties at considerable

length and cost. These discussions resulted in an agreement on hundreds of complex search

strings. (According to defendants, there were nearly 350.) Applying these search terms to many

millions of documents collected across the defendant groups has yielded the more than 1.3

million documents that defendants to date have produced. As described in the parties' prior and

present correspondence, the search terms that have been used to date appear to the Court equal to

the task of capturing the key concepts, events, products, entities, and personnel at issue in this

case.[1]

---

[1] To the extent that plaintiffs have suggested that additional document review is merited because
the number of documents produced to date is below the number of documents produced in earlier

Plaintiffs' argument for reopening negotiations on search strings is based on the exhibits attached to their letter. These exhibits, notably, were yielded by the *existing* search terms. Based on its review of these exhibits and the parties' discussion of them, the Court is not persuaded that these exhibits suggest the existence of a body of relevant electronic records that have eluded (*i.e.*, were not captured by) the search terms already deployed.

Further, although it is theoretically possible that relevant such documents might emerge were a new round of document review undertaken based on broadened search terms, the Court independently would deny the request for the application of additional search terms based on the breadth and unfocused quality of the topics that plaintiffs seek to pursue in the proposed new round of document review (*e.g.*, "hostility towards other market participants," "restrictions on trading protocols"). A new round of document review and production aimed at capturing these broadly formulated concepts and behavior patterns unavoidably would impose major burdens and costs on the producing parties.[2] It would have potential, too, to delay discovery, which is soon to move into the deposition phase. Evaluating proportionality, *see* Fed. R. Civ. P. 26(b)(1), the Court finds that these countervailing considerations far outweigh the conjectural benefits of a new round of document review.

2.      The Court, however, will permit the application of additional search terms as to a limited subject: communications within Tradeweb's product committee and trading protocol groups. The Court has previously held that Tradeweb's boards and committees, on which

---

litigations involving antitrust claims directed to the securities industry, the Court is unpersuaded by this analogy. There is no inherent reason why the conspiracy alleged here involving interest rate swaps would necessarily generate a similar number of relevant documents as a conspiracy alleged to have involved a different product and market.

[2] Plaintiffs have not offered to share in the cost of additional document review.

representatives of Dealer Defendants sat, have been plausibly alleged to have been forums for potential collusion following the July 21, 2010 passage of Dodd-Frank. *See* Dkt. 322 (January 8, 2018 Discovery Order) at 6.  The Court has further recognized that the Dealers' joint operation of Tradeweb after that date has the "potential to illuminate their actions and intentions with respect to the SEFs (Javelin, TeraExchange, and TrueEx) that did attempt to operate anonymous all-to-all IRS trading platforms." *Id.*; *see also id.* at 7, 11–12.

Plaintiffs represent that, until they had received document discovery, they had not been aware that Tradeweb maintained a "product committee" and "trading protocol groups" that provided an opportunity for inter-defendant discussions regarding "IRS trading platforms and ways for Defendants to influence market structure." Dkt. 468 at 1.  Plaintiffs have adduced emails among participants on one or more of these Tradeweb bodies which, plaintiffs assert, reflect inter-Dealer communications along these lines. *See id.* Exhs. C, D.  Defendants, for their part, depict these communications as benign. Dkt. 484 at 3.

On the present record, it is not clear whether search terms were used that were targeted specifically to meetings or other communications among Dealer participants in these committees or groups.  Given plaintiffs' counsels' asserted unawareness of the existence of these bodies at the time that search terms were negotiated, it appears unlikely that negotiations about search terms were undertaken with the parties mutually having these Tradeweb committees or groups in mind.

To be sure, defendants represent that search terms using derivatives of the term "protocol," in connection with "interest rates swaps," were utilized. *See* Dkt. 484 at 2.  These and other terms may well have captured the bulk of relevant communications among members of these Tradeweb committees or groups.  But the Court is persuaded that the interest of fulsome

discovery as to this potentially important area supports assuring, this time with plaintiffs' counsel aware of the existence of and Dealer participants in these bodies, that the search terms used are up to the task of yielding responsive documents consistent with the theories of relevance the Court has approved.

Accordingly, the Court directs that counsel forthwith reexamine the search terms used to capture communications among Dealer participants in these Tradeweb committees and groups, between July 21, 2010 and December 31, 2016, on the subjects that the Court has previously identified as relevant.  Counsel are to meet and confer in good faith with the goal of identifying additional search terms sufficient to capture such communications.  For avoidance of doubt, the Court views this as a tightly defined and limited exercise.  It is not intended as license to revisit any other document review protocols in this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 22, 2018
       New York, New York

4